EMIL SORBAN *v.* STERLING ENGINEERING CORPORATION
(AC 23146)

Lavery, C. J., and Foti and McLachlan, Js.

Argued June 9—officially released September 16, 2003

*Eric H. Rothauser*, with whom were *Thomas Cunnane*, legal intern, and, on the brief, *John L. Bonee III*, for the appellant (plaintiff).

*Anne Kelly Zovas*, with whom, on the brief, was *Courtney C. Stabnick*, for the appellee (defendant).

*Opinion*

LAVERY, C. J. The plaintiff employee, Emil Sorban, appeals from the summary judgment rendered by the trial court in favor of the defendant employer, Sterling Engineering Corporation. The plaintiff claims that the court improperly concluded that (1) the substantial certainty exception to the exclusivity provisions of the Workers' Compensation Act (act), General Statutes § 31-275 et seq., is equivalent to inevitability and (2) there was no genuine issue of material fact as to whether the defendant's alleged intentional actions created a situation in which the plaintiff's injuries were substantially certain to occur. We agree with the plaintiff that the court improperly concluded that the substantial certainty standard is equivalent to inevitability, but determine nevertheless that there was no genuine issue of material fact and that the defendant was enti-

tled to judgment as a matter of law. Accordingly, we affirm the judgment of the trial court.[1]

The following facts, gathered from deposition testimony, affidavits and the procedural history, are necessary for our resolution of the plaintiff's appeal. On March 12, 1997, the plaintiff was employed by the defendant as a machine operator. He had worked for the defendant for nine years. The plaintiff was assigned to work on a vertical turret lathe, which required the operator to place a large circular piece of material on a rotating table. The operator would position the cutting tool (tool head) that was attached to an arm over the rotating table, and then cut the material.

The plaintiff noticed that the lathe was malfunctioning; specifically, the cutting tool was not stopping in the proper position. Instead, the tool head drifted toward the material located on the rotating table. The plaintiff alerted his supervisor to the problem and, after inspecting the machine, the supervisor told the plaintiff to "be careful." The plaintiff turned on the rotating table and then attempted to position the arm. After turning the switch that would allow him to position the arm and tool head, the plaintiff heard a click and was unable to complete the task. He attempted unsuccessfully to position the tool head a second time. During his third attempt, the tool head crashed into the material located on the rotating table. As a result, a piece of material was thrown from the machine, broke though a safety shield guard and struck the plaintiff's arm, causing a severe laceration and other injuries.

The plaintiff's complaint, dated March 23, 1999, alleged, inter alia, that the defendant knew that its employees operated the lathe without proper shield guards, that there were insufficient butt blocks to

---

[1] We need not, therefore, reach the issue of whether the plaintiff presented evidence that an alter ego of the defendant authorized or directed his work.

secure the material to the rotating table, and that the tool head traveled too far and would strike materials on the rotating table. The plaintiff alleges that those conditions caused the materials to be thrown at the operator. Thus, the plaintiff contends that the defendant "intentionally required, caused, allowed, and permitted its employees . . . to do work in which it was substantially certain that employees including [the plaintiff] would get struck by thrown rotating parts and be severely injured."

The defendant, pursuant to Practice Book § 17-44 et seq., filed a motion for summary judgment on the basis of its special defense that the plaintiff's cause of action was barred by the exclusive remedy provision of the act, General Statutes § 31-284 (a).[2] The court granted the defendant's motion, and this appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly concluded that the substantial certainty standard is equivalent to inevitability. Specifically, he argues that inevitability is defined as actual or virtual certainty, rather than substantial certainty. Furthermore, he urges us to adopt an objective test, that is, whether a reasonable person would understand that the conduct of the employer was substantially certain to result in injury or death to the employee. We agree with the plaintiff.

At the outset, we set forth our well established standard of review. "[T]he scope of our review of the granting of a motion for summary judgment is plenary. . . . In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any

---

[2] General Statutes § 31-284 (a) provides in relevant part that "[a]ll rights and claims between an employer . . . and employees . . . arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter . . . ."

issue of fact. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . In ruling on a motion for summary judgment, it is customary for the court to review documentary proof submitted by the parties to demonstrate the existence or nonexistence of issues of material fact. Practice Book § 17-45.

"Practice Book § 17-49 provides in relevant part: [J]udgment . . . shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) *Drew* v. *William W. Backus Hospital*, 77 Conn. App. 645, 650–51, 825 A.2d 810 (2003).

"On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Taricani* v. *Nationwide Mutual Ins. Co.*, 77 Conn. App. 139, 144, 822 A.2d 341 (2003).

A brief review of the purpose of the act will facilitate our resolution of the plaintiff's appeal. "Connecticut first adopted a statutory scheme of workers' compensation in 1913. The purpose of the [act] . . . is to provide compensation for injuries arising out of and in the course of employment, regardless of fault. . . . Under the statute, the employee surrenders his right to bring a common law action against the employer, thereby limiting the employer's liability to the statutory amount. . . . In return, the employee is compensated for his or her losses without having to prove liability. . . . In a word, these statutes compromise an employee's right to a common law tort action for work related injuries in return for *relatively quick* and certain compensation. . . . The intention of the framers of the act was to establish *a speedy,* effective and inexpensive method for determining claims for compensation." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Doe* v. *Yale University,* 252 Conn. 641, 672, 748 A.2d 834 (2000).

In *Morocco* v. *Rex Lumber Co.,* 72 Conn. App. 516, 805 A.2d 168 (2002), we discussed the exclusivity provision of the act as well as the exception to that general rule. "Workers' compensation systems ordinarily are limited to recovery in tort actions for injuries arising in the workplace during the course of employment and compensate employees for such injuries. See *Jett* v. *Dunlap,* 179 Conn. 215, 222, 425 A.2d 1263 (1979). In most cases, the Connecticut act is a bar to independent actions filed by an employee against an employer for an injury that occurs at the workplace. See General Statutes § 31-284.

"There is an exception, however, to the exclusivity provision of the workers' compensation statute. That one exception exists when the intentional tort of an employer injures an employee or when the employer has engaged in wilful or serious misconduct. *Suarez* v.

*Dickmont Plastics Corp.*, [229 Conn. 99, 106, 639 A.2d 507 (1994) (*Suarez I*)]. The exception gives an employee a cause of action in addition to the remedies provided by the act. . . . [T]he employer must have engaged in *intentional* misconduct, as that has been defined through our case law . . . directed against its employee. . . . Anything short of genuine intentional injury sustained by the employee and caused by the employer is compensable under the [a]ct. . . . The exception does not include accidental injuries caused by gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, *breach of statute*, or other misconduct of the employer short of genuine intentional injury. . . .

"The actual intent standard or test could produce inequities under some hypothetical situations, and it is, therefore, the substantial certainty standard that most often is used." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Morocco v. Rex Lumber Co.*, supra, 72 Conn. App. 520–22.

Our Supreme Court has stated that an employee can prevail only "by proving either that the employer actually intended to injure the plaintiff (actual intent standard) or that the employer intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur (substantial certainty standard)." *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 257–58, 698 A.2d 838 (1997) (*Suarez II*).

"The substantial certainty test provides for the intent to injure exception to be strictly construed and still allows for a plaintiff to maintain a cause of action against an employer where the evidence is sufficient to support an inference that the employer deliberately instructed an employee to injure himself." (Internal quotation marks omitted.) *Morocco* v. *Rex Lumber Co.*, supra, 72 Conn. App. 522.

In a trilogy of recent cases, this court established the scope of the substantial certainty exception to the exclusivity provision of the act. To escape the exclusivity provision of the act, the plaintiff must allege facts to establish either the actual intent standard or the substantial certainty standard. "Under either theory of employer liability, however, the characteristic element [of wilful misconduct] is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . [See also *Suarez II,* supra, 242 Conn. 257–58.] Not only the action producing the injury but the resulting injury also must be intentional. . . .

"What is being tested is not the degree of gravity of the employer's conduct, but, rather, the narrow issue of intentional versus accidental conduct." (Citations omitted; internal quotation marks omitted.) *Morocco* v. *Rex Lumber Co.,* supra, 72 Conn. App. 523; see also *Ramos* v. *Branford,* 63 Conn. App. 671, 679, 778 A.2d 972 (2001); *Melanson* v. W*est Hartford,* 61 Conn. App. 683, 767 A.2d 764, cert. denied, 256 Conn. 904, 772 A.2d 595 (2001).

With the foregoing principles in mind, we turn to the present case. The court stated that "[s]ubstantial certainty is equivalent to inevitability and is certitude beyond even high probability." The plaintiff's argument focuses solely on the use of the term "inevitability." The plaintiff urges that this standard for substantial certainty should be rejected and requests that this court perform the "daunting" task of defining substantial certainty.

We note that neither this court nor our Supreme Court has definitively discussed what is meant by the substantial certainty test.[3] We have stated that "the sub-

---

[3] The appellate courts in this state often have mentioned the substantial certainty test in the context of workers' compensation cases. See, e.g., *Suarez II,* supra, 242 Conn. 279–80; *Suarez I,* supra, 229 Conn. 109; *Morocco* v. *Rex Lumber Co.,* supra, 72 Conn. App. 523; *Ramos* v. *Branford,* supra, 63 Conn. App. 679. Most recently, our Supreme Court, in a per curiam

stantial certainty standard is a subset of the intentional tort exception." *Ramos* v. *Branford,* supra, 63 Conn. App. 679; A. Sevarino, Connecticut Workers' Compensation After Reforms (3d Ed. 2002) § 4.32.3, p. 528. To meet that standard, the employee must show that the employer's act in producing the injury was deliberate or intentional and that the resulting injury was substantially certain, from the employer's perspective, to occur. *Ramos* v. *Branford,* supra, 680. "Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, *the common-law liability of the employer cannot . . . be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury.* 6 A. Larson & L. Larson, Workmen's Compensation (1997) § 68.13, pp. 13-12 through 13-13. *What is being tested is not the degree of gravity of the employer's conduct, but, rather, the narrow issue of intentional versus accidental conduct.*" (Emphasis added; internal quotation marks omitted.) *Ramos* v. *Branford,* supra, 680–81. Last, we note that our Supreme Court has stated that "a high risk or probability of harm is not equivalent to the substantial certainty without which an actor cannot be said to intend the harm in which his act results." (Internal quotation marks omitted.) *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 101, 491 A.2d 368 (1985).

"Inevitable" is defined as "[i]ncapable of being avoided . . . ." Black's Law Dictionary (6th Ed. 1990).

opinion, adopted a trial court's decision that defined the substantially certain test as inevitable. See *Stebbins* v. *Doncasters, Inc.,* 47 Conn. Sup. 638, 644, 820 A.2d 1137 (2002), aff'd, 263 Conn. 231, 819 A.2d 287 (2003). Nevertheless, a precise definition or detailed discussion of the substantial certainty test is absent from those cases.

"Certainty" is defined as the "[a]bsence of doubt . . . definite. The quality of being specific, accurate and distinct." Id. It would appear, therefore, that "inevitable" and "certainty" are equivalent terms. If the test were "actual certainty," or "virtual certainty," then the court's use of inevitability would be proper. The test, however, is not actual certainty, but rather substantial certainty.

Courts in other jurisdictions have endorsed the use of a substantial certainty standard as a less demanding standard than actual or virtual certainty. In *Turner* v. *PCR, Inc.*, 754 So. 2d 683, 687 n.4 (Fla. 2000), for example, the court stated: "We recognize that some courts have elevated the standard . . . from 'substantial certainty' to 'virtual certainty.' . . . Although we continue to find that 'substantial certainty' requires a showing greater than 'gross negligence,' we emphasize that the appropriate standard is 'substantial certainty,' not the heightened 'virtual certainty' standard." (Citations omitted.) See, e.g., *Bazley* v. *Tortorich*, 397 So. 2d 475, 482 (La. 1981); *Laidlow* v. *Hariton Machinery Co.*, 170 N.J. 602, 613–14, 790 A.2d 884 (2002); *Fyffe* v. *Jeno's, Inc.*, 59 Ohio St. 3d 115, 118, 570 N.E.2d 1108 (1991); *Mandolidis* v. *Elkins Industries, Inc.*, 161 W. Va. 695, 246 S.E.2d 907 (1978), superseded by statute, *Gallapoo* v. *Wal-Mart Stores, Inc.*, 197 W. Va. 172, 175, 475 S.E.2d 172 (1996); but see *Fryer* v. *Kranz*, 616 N.W.2d 102, 106 (S.D. 2000) (" '[s]ubstantial certainty should be equated with virtual certainty' "); *Birklid* v. *Boeing Co.*, 127 Wash. 2d 853, 860, 904 P.2d 278 (1995) (substantial certainty insufficient to show deliberate intention); *Fenner* v. *Municipality of Anchorage*, 53 P.3d 573, 576–77 (Alaska 2002) (stating that court has not adopted substantial certainty test).

The Supreme Court of Louisiana set forth the following definition of the substantial certainty test, which we find persuasive: "The traditional definition is simply

a way of relieving the claimant of the difficulty of trying to establish subjective state of mind (desiring the consequences) if he can show *substantial certainty* that the consequences will follow the act. The latter takes the cases out of the realm of possibility of risk (which are negligence terms), and expresses the concept that an actor with such a certainty cannot be believed if he denies that he knew the consequences would follow. In human experience, we know that specific consequences are substantially certain to follow some acts." (Emphasis in original; internal quotation marks omitted.) *Reeves* v. *Structural Preservation Systems*, 731 So. 2d 208, 212 (La. 1999). The North Carolina Court of Appeals defined substantial certainty as *"more than a possibility or substantial probability of a serious injury but is less than actual certainty."* (Emphasis added; internal quotation marks omitted.) *Wiggins* v. *Pelikan, Inc.*, 132 N.C. App. 752, 755–56, 513 S.E.2d 829 (1999); see also 1 Restatement (Second), Torts § 8A (1965).[4]

In *Wiggins*, the court also established various factors to assist in the determination of whether the substantial certainty test was satisfied. Those factors are "[w]hether the risk that caused the harm existed for a long period of time without causing injury. . . . Whether the risk was created by a defective instrumentality with a high probability of causing the harm at issue. . . . Whether there was evidence the employer, prior to the accident, attempted to remedy the risk that caused the harm. . . . Whether the employer's conduct

---

[4] Section 8A of the Restatement provides in relevant part: "The word 'intent' is used . . . to denote that the actor desires to cause consequences of his act, *or that he believes that the consequences are substantially certain to result from it.*" 1 Restatement (Second), supra, § 8A. Comment (b) to that section provides in relevant part: "If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. . . ." Id., § 8A, comment (b).

which created the risk violated state or federal work safety regulations. . . . Whether the . . . employer created a risk by failing to adhere to an industry practice, even though there was no violation of a state or federal safety regulation [and] [w]hether the . . . employer offered training in the safe behavior appropriate in the context of the risk causing the harm." (Citations omitted.) *Wiggins* v. *Pelikan, Inc.*, supra, 132 N.C. App. 756–58. Those factors may provide guidance and serve to assist courts in the future that must address the issue. We agree that this list is not exclusive and that not every factor will be applicable in all factual situations. Furthermore, "[n]o one factor is determinative in evaluating whether [an employee] has stated a valid . . . claim; rather, all of the facts taken together must be considered." (Internal quotation marks omitted.) Id., 756.

In summary, we conclude that to satisfy the substantial certainty test, the employee must show that a reasonable person in the position of the employer would have known that the injury or death suffered by the employee was substantially certain to follow from the employer's actions. Substantial certainty means more than substantial probability, but does not mean actual or virtual certainty, or inevitability. Substantial certainty exists when the employer cannot be believed if it denies that it knew the consequences were certain to follow. We also stress, consistent with our prior holdings and those of our Supreme Court, that this exception to the exclusivity provision of the act is strictly construed. See, e.g., *Ramos* v. *Branford*, supra, 63 Conn. App. 679, citing *Gulden* v. *Crown Zellerbach Corp.*, 890 F.2d 195, 197 (9th Cir. 1989). Finally, we note that "the characteristic element [of wilful misconduct] is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the

resulting injury also must be intentional." (Internal quotation marks omitted.) *Morocco* v. *Rex Lumber Co.*, supra, 72 Conn. App. 523.

Accordingly, we conclude that the court applied the improper standard when it defined substantial certainty as the equivalent of inevitability.

## II

Our next task, therefore, is to determine whether summary judgment is warranted in this case on the basis of the appropriate definition of the substantial certainty standard. It is axiomatic that "[w]e may affirm a proper result of the trial court for a different reason." *Biro* v. *Hirsch*, 62 Conn. App. 11, 16 n.7, 771 A.2d 129, cert. denied, 256 Conn. 908, 772 A.2d 601 (2001); see also *State* v. *Salmond*, 69 Conn. App. 81, 91, 797 A.2d 1113, cert. denied, 260 Conn. 929, 798 A.2d 973 (2002). We determine that under the facts and circumstances of this case, the plaintiff failed to establish facts that demonstrate that the defendant intentionally created a dangerous condition that made the injuries he sustained substantially certain to occur.

The plaintiff argues that evidence existed to support his claim that there was a genuine issue of material fact that his injury was substantially certain to occur as a result of the deliberate actions of the defendant. First, the plaintiff's expert, Irving U. Ojalvo, a professional engineer, noted the report from an investigator from the federal Occupational Safety and Health Administration (OSHA) that a similar incident occurred on September 20, 1995, in which the tool head traveled too far, struck the material, causing it to be knocked off the rotating table, and struck the operator. The investigator concluded that if the defendant had adopted a policy after the 1995 incident regarding the operation of the lathe, it was never communicated to the employees. The plaintiff alleged that he was never trained to

operate the lathe with the rotating table turned off. The plaintiff also claims that the defendant knew that the lathe was defective and that the tool head tended to drift. Finally, the plaintiff contends that the defendant misrepresented a material fact to the investigator by stating that the lathe did not have brakes when in fact it did.

The crux of the plaintiff's case is that the safety features of the lathe were not operational, the defendant failed to train the plaintiff properly and to inform him of the policy regarding the rotating table, and that the defendant failed to provide adequate butt blocks and guard shields. As a result of those intentional acts, the plaintiff claims, his injuries were substantially certain to occur.

In *Morocco*, we stated that "[t]his court and the Supreme Court . . . have stated that OSHA violations are not enough to take the resulting injury out of the exclusivity provision of the act." *Morocco* v. *Rex Lumber Co.*, supra, 72 Conn. App. 525. We also have set forth the rule that "[a] wrongful failure to act to prevent injury is not the equivalent of an intention to cause injury." (Internal quotation marks omitted.) *Ramos* v. *Branford*, supra, 63 Conn. App. 685; *Melanson* v. *West Hartford*, supra, 61 Conn. App. 689 n.6.

In the record before us, there is no evidence that the defendant's actions were committed with the purpose of causing injury. See *Ramos* v. *Branford*, supra, 63 Conn. App. 684. Although the defendant's failure (1) to repair the lathe, (2) to provide adequate butt blocks and shield guards, and (3) to alert employees to a policy regarding the use of the rotating table may constitute negligence, gross negligence or even recklessness, those allegations fail to meet the high threshold of substantial certainty, even under the definition set forth in part I. The combination of factors demonstrated a fail-

ure to act; however, such a failure is not the equivalent of an intention to cause injury. We conclude, therefore, that the court properly rendered summary judgment in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.