## CHERYL STEBBINS ET AL. *v.* DONCASTERS, INC.*

Superior Court, Complex Litigation Docket at Tolland—
File No. X07CV990072908S

Memorandum filed January 16, 2002

*Newman, Creed & Associates*, for the plaintiffs.

*Howard, Kohn, Sprague & Fitzgerald*, for the defendant.

### INTRODUCTION

SFERRAZZA, J. The defendant, Doncasters, Inc., moves for summary judgment in the present action filed by Cheryl Stebbins, the named plaintiff, together with well over twenty other plaintiffs, who are present or former employees of the defendant. The motion claims that the present action is barred by the exclusivity provision of the Workers' Compensation Act, chapter 508 of the General Statutes, and the expiration of any applicable statute of limitations. The plaintiffs contend that

*Affirmed. *Stebbins* v. *Doncasters, Inc.*, 263 Conn. 231, 819 A.2d 287 (2003).

their claims fall within the exception to the exclusivity statute enunciated in *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 639 A.2d 507 (1994) (*Suarez I*), and *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 698 A.2d 838 (1997) (*Suarez II*), and that the defendant engaged in a continuing course of conduct such that these cases were timely commenced. On January 7, 2002, the court heard argument on this motion.

Summary judgment shall be granted if the pleading and documentary proof submitted demonstrates that no genuine dispute of material fact exists and that the movant is entitled to judgment as a matter of law. Practice Book § 17-49.

I

General Statutes § 31-284 (a) exempts employers from liability for civil damages "on account of personal injury sustained by an employee arising out of and in the course of his employment . . . ." " 'Arising out of and in the course of his employment' " is defined as an accidental injury or occupational disease originating while the employee is engaged "in the line of [his] duty in the business or affairs of the employer upon the employer's premises . . . ." General Statutes § 31-275 (1). " 'Personal injury' " includes accidental injury and "injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease." General Statutes § 31-275 (16) (A). " 'Occupational disease' " includes diseases peculiar to the occupation and "due to causes in excess of the ordinary hazards of employment" and specifically embraces disease resulting from "exposure to or contact with any radioactive material. . . ." General Statutes § 31-275 (15).

The Workers' Compensation Act is remedial and should be "construed generously to accomplish its purpose." *Driscoll* v. *General Nutrition Corp.*, 252 Conn.

215, 220, 752 A.2d 1069 (2000). The exclusivity afforded by § 31-284 (a) "manifests a legislative policy decision that a limitation on remedies under tort law is an appropriate trade-off for the benefits provided by workers' compensation." Id., 220–21. This trade-off is one of the primary purposes of the act. Id., 222. Section 31-284 (a) reflects a compromise of the right to common-law remedies for workplace injury in exchange for "relatively quick and certain compensation." (Internal quotation marks omitted.) Id. Any ambiguities in the act must be resolved to advance this remedial purpose. Id.

In the present case, the plaintiffs assert that they have suffered, and some still suffer, respiratory ailments proximately caused by exposure to airborne droplets of petroleum-based metal working fluids which had been contaminated by microorganisms. Inhalation of these droplets introduces the microorganisms into the lungs resulting in a form of hypersensitivity pneumonitis. For purposes of the present motion, the court assumes these assertions to be true.

Before *Jett* v. *Dunlop*, 179 Conn. 215, 425 A.2d 1263 (1979), our Supreme Court had consistently ruled that workers' compensation is the sole remedy available to employees for work-related injury. Id., 217. In *Jett*, the Supreme Court recognized, in dictum, a possible exception to the exclusivity of workers' compensation where the employer intentionally directs or authorizes another employee to assault the injured party. Id., 218. An "employer" in this context means not merely an agent or one in a supervisory role but one "of such rank" so as to "be deemed the alter ego" of the employer. Id., 219.

In *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 491 A.2d 368 (1985), our Supreme Court was asked to extend the exception mentioned in *Jett*, to the situation where an employer intentionally violates safety rules and regulations regarding safe ventilation, fails to correct such

violations, and fails to warn employees of the dangers created, which consequently results in an explosion killing an employee. The Supreme Court declined this invitation to expand the crack in the exclusivity shield. Id., 100. Instead, the court held that "intentionally," for purposes of avoiding the exclusive remedy of workers' compensation, means to intend the consequent harm and not just the action which precipitated that harm. Id., 101. This intent is distinguishable from reckless behavior. Id., 102–103. High forseeability or strong probability are insufficient to establish this intent. Id. Although such intent may be proven circumstantially, what must be established is that the employer knew that the injury was substantially certain to follow the employer's deliberate course of action. Id. To hold otherwise would undermine the statutory scheme and purpose of the workers' compensation law and usurp legislative prerogative. Id., 106.

Definitive explication of the intentional injury exception to workers' compensation exclusivity came in *Suarez I*. Our Supreme Court explained in *Suarez I* that the substantial certainty test differed from a pure intent test in that the employee need only show that the employer believed there was a substantial certainty that the employee would suffer injury from its deliberate conduct rather than a requirement that the employer intended the injury to occur. *Suarez I*, supra, 229 Conn. 109–11.

The documentary evidence submitted in opposition to a motion for summary judgment in *Suarez I* raised a genuine dispute concerning the employer's belief that an employee would inevitably amputate his fingers as a result of the employer's demands of the employee. Id., 111. The evidence proffered showed that the employer refused to allow a machine maintainer to turn off a

plastic molding device or to use a vacuum to remove waste plastic from the machine. The evidence showed that the employer insisted that the employee plunge his bare hands into an operating machine. The Supreme Court remanded the case for trial; on remand the trial resulted in a plaintiff's verdict. The matter was appealed once again in *Suarez II*. In *Suarez II*, our Supreme Court described its earlier ruling as establishing an exception to the workers' compensation exclusivity provision if the employee can prove "either that the employer actually intended to injure the plaintiff (actual intent standard) or that the employer intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur (substantial certainty standard)." *Suarez II*, supra, 242 Conn. 257–58. The jury had found that the employer actually intended that the plaintiff sustain harm rather than utilizing the substantial certainty standard. The Supreme Court reversed and ordered the verdict set aside because the trial evidence was inadequate to support actual intent. Id., 280–81. The court reiterated that "[s]ubstantial certainty centers on whether the employer believed the injury was substantially certain to follow the employer's acts or conduct . . . ." Id., 280.

The defendant in the present case has submitted documentary evidence which indicates that the employer harbored no belief that its actions or conduct were substantially certain to cause respiratory illness in the plaintiffs. The outbreak of pneumonitis was confined to its Farmington plant even though the same type of machinery and fluids were used during the same period at another facility of the defendant in Ivoryton. The majority of employees at the Farmington plant exhibited no signs of the illness. Tests performed on the air at the factory produced levels of metal working fluid within the safety standards required by the federal

Occupational Safety and Health Act (OSHA) and the National Institute for Occupational Safety and Health. An investigation by the occupational hazards department of the University of Connecticut Health Center (health center) resulted in findings which list microorganisms in the fluid as the most likely source of the outbreak but do not conclusively identify the cause in the absence of a biopsy. The health center made certain tentative recommendations which were followed in part and ignored in part. The outbreak subsided without definitive findings as to its cause or remission.

The movant in a summary judgment motion has the burden of demonstrating an absence of genuine dispute as to material facts. *Mingachos* v. *CBS, Inc.*, supra, 196 Conn. 111. Once the movant has offered proof as to a material fact, the opponent must offer countervailing evidence to show a factual controversy exists. *Suarez I*, supra, 229 Conn. 105. In addition to the evidence noted previously, Robert Boswell testified by way of deposition and also gave an affidavit which indicates that he was the defendant's manager of safety, health, and environment during the outbreak and holds that position presently; that the defendant was and still remains ignorant as to the true cause of the outbreak; and the defendant never intended to harm its workers nor believed its practices would result in injury.

The plaintiffs' documentary proof consists of evidence that the defendant repeatedly failed to follow all recommendations of the health center and failed to relate these recommendations to its work force, especially with respect to the use of a type of respirator known as a "Scott pack." The plaintiffs also proffer evidence that the defendant had violated other safety rules and regulations in the past regarding ventilation and the proper labeling of containers of hazardous materials.

The plaintiffs' submissions may show that the defendant exhibited a lackadaisical or even cavalier attitude toward worker safety, but are bereft of evidence from which one might reasonably and logically infer that the defendant believed its conduct was substantially certain to cause hypersensitivity pneumonitis in these plaintiffs. As noted previously, substantial certainty is equivalent to inevitability and is certitude beyond even high probability.

It is not the gravity of the employer's conduct which comes under scrutiny but, rather, the employer's subjective belief. *Suarez II*, supra, 242 Conn. 279. The evidence submitted by the plaintiffs amounts to no more "than a mere failure to provide appropriate safety or protective measures." *Suarez I*, supra, 229 Conn. 111. The substantial certainty standard requires a showing that the activity producing the injury to the employee "was intentional or deliberate and the resulting injury, from the standpoint of the employer, was substantially certain to result from the employer's acts or conduct." *Ramos* v. *Branford*, 63 Conn. App. 671, 680, 778 A.2d 972 (2001).

"Failure to take affirmative remedial action, even if wrongful, does not demonstrate an affirmative intent to create a situation that causes persons injury." *Melanson* v. *West Hartford*, 61 Conn. App. 683, 689, 767 A.2d 764, cert. denied, 256 Conn. 904, 772 A.2d 595 (2001). Such delinquencies are not circumstantial evidence of a subjective belief that injury is substantially certain to occur.

There is simply no documentary proof offered from which one might rationally infer that the defendant held the belief that its course of action and inaction would lead, inevitably, to the respiratory illness contracted by these plaintiffs. On the basis of the exclusivity provision

set forth in § 31-284 (a), the defendant is entitled to summary judgment as a matter of law.

## II

Having determined that summary judgment ought to be granted on the ground of exclusive remedy under the Workers' Compensation Act, the court does not address the defendant's statute of limitations argument.

## CONCLUSION

The defendant's motion for summary judgment is granted.