## EDUARDO MARTINEZ ET AL. *v.* SOUTHINGTON METAL FABRICATING COMPANY
### (AC 27201)

Bishop, Rogers and McDonald, Js.

Argued February 20—officially released June 19, 2007

*Patrick Tomasiewicz*, with whom, on the brief, was *Jonathan A. Cantor*, for the appellants (named plaintiff et al.).

*Lawrence L. Connelli*, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff Eduardo Martinez[1] appeals from the trial court's determination that his complaint for damages resulting from a work-related injury was barred by General Statutes § 31-284,[2] the exclusivity provision of the Workers' Compensation Act (act), General Statutes § 31-275 et seq. On appeal, the plaintiff contends that the trial court improperly granted the defendant's motion for summary judgment because his claim falls within an exception to the exclusivity statute

---

[1] The plaintiff's wife, Maria Borrero, also is a plaintiff. Southington Metal Fabricating Company also intervened as a plaintiff, seeking reimbursement for certain workers' compensation payments it has paid or may become obligated to pay to Martinez. For purposes of this appeal, we refer in this opinion to Martinez as the plaintiff and to Southington Metal Fabricating Company as the defendant.

[2] General Statutes § 31-284 (a) provides in relevant part: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation."

for cases in which the employee can prove that the employer intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur. We affirm the judgment of the trial court.

The plaintiff claims that he was injured on February 13, 2002 while working for the defendant, the Southington Metal Fabricating Company. He alleges that, on that date, he was assisting a coworker, Cristobal Nieves, in the operation of a metal bending machine. Nieves operated the control switch of the machine with his back partially turned away from the plaintiff, who stood in front of the machine and lifted a large sheet of steel plate that was approximately eight feet by two feet into the machine. Nieves thought that he heard the plaintiff say "okay," causing him to activate the machine. At the time, the plaintiff was still positioning the steel plate and his left arm was still under the clamp of the machine. Once the machine was activated, Nieves was unable to stop it, resulting in a severe crush injury to the plaintiff's left arm, ultimately requiring surgical treatment and amputation of his left arm below the elbow.

The plaintiff filed this action alleging that the defendant intentionally created a dangerous condition that made his injuries substantially certain to occur. The defendant moved for summary judgment on the basis that the plaintiff's complaint was barred by the exclusivity provision of the act. The court granted the defendant's motion for summary judgment, finding that the plaintiff failed to present any evidence indicating the existence of an issue of material fact as to whether intentional acts by the defendant created a substantial certainty that the plaintiff's injury would occur. This appeal followed.

"Summary judgment is appropriate when the pleadings, affidavits and any other proof submitted show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Thus, because the court's decision on a motion for summary judgment is a legal determination, our review on appeal is plenary . . . ." (Citations omitted; internal quotation marks omitted.) *Heussner* v. *Day, Berry & Howard, LLP*, 94 Conn. App. 569, 572–73, 893 A.2d 486, cert. denied, 278 Conn. 912, 899 A.2d 38 (2006).

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . .

"It is frequently stated in Connecticut's case law that, pursuant to Practice Book §§ 17-45 and 17-46, a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]ypically, [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . Moreover, [t]o establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief. . . . Further,

unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact." (Citations omitted; internal quotation marks omitted.) *Rockwell* v. *Quintner*, 96 Conn. App. 221, 228–29, 899 A.2d 738, cert. denied, 280 Conn. 917, 908 A.2d 538 (2006).

General Statutes § 31-284 (a) exempts employers from liability for civil damages "on account of personal injury sustained by an employee arising out of and in the course of his employment . . . ." " 'Arising out of and in the course of his employment' " is defined as an accidental injury or occupational disease originating while the employee is engaged "in the line of [his] duty in the business or affairs of the employer upon the employer's premises . . . ." General Statutes § 31-275 (1). " 'Personal injury' " includes accidental injury and "injury to an employee which is causally connected with [his] employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease." General Statutes § 31-275 (16) (A).

"Our Workers' Compensation Act indisputably is a remedial statute that should be construed generously to accomplish its purpose. . . . Section 31-284 (a), the exclusivity provision in the act, manifests a legislative policy decision that a limitation on remedies under tort law is an appropriate trade-off for the benefits provided by workers' compensation. That trade-off is part and parcel of the remedial purpose of the act in its entirety. Accordingly, our case law on workers' compensation exclusivity reflects the proposition that these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." (Citations omitted; internal quotation marks omitted.) *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 220–21, 752 A.2d 1069 (2000).

Our Supreme Court first recognized a narrow exception to the exclusivity provision in *Jett* v. *Dunlap*, 179 Conn. 215, 425 A.2d 1263 (1979). In *Jett*, the Supreme Court recognized a possible exception to the exclusivity of workers' compensation where the employer intentionally directs or authorizes another employee to assault the injured party. Id., 218.

In *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 491 A.2d 368 (1985), our Supreme Court declined the invitation to extend the exception to situations in which an injury resulted from the employer's intentional, wilful or reckless violations of safety standards established pursuant to federal or state laws. The court held: "To bypass the exclusivity of the act, the intentional or deliberate act or conduct alleged must have been designed to cause the injury that resulted." Id., 102. This intent is distinguishable from reckless behavior. Id., 102–103. High foreseeability or strong probability are insufficient to establish this intent. Id. Although such intent may be proven circumstantially, what must be established is that the employer knew that the injury was substantially certain to follow the employer's deliberate course of action. Id. To hold otherwise would undermine the statutory scheme and purpose of the workers' compensation law and usurp legislative prerogative. See id., 106.

Definitive explication of the intentional injury exception to workers' compensation exclusivity came in *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 639 A.2d 507 (1994) (*Suarez I*), in which the court stated that "intent refers to the consequences of an act . . . [and] denote[s] that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to follow from it. . . . A result is intended if the act is done for the purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue." (Citation omitted; internal quotation marks

omitted.) Id., 108. The plaintiff in *Suarez I* alleged that the defendant required the plaintiff and other employees to clean a plastic molding machine while it was running, refused to allow the plaintiff to use safer methods to clean the machine and refused to place a protective cover on the machine. Id., 101. It also was alleged that the defendant had told the plaintiff that if he used safer methods to clean the machine, his employment would be terminated. Id. Our Supreme Court stated that "the defendant's [alleged] conduct constituted more than a mere failure to provide appropriate safety or protective measures, and that the plaintiff's injury was the inevitable and known result of the actions required of him by the defendant." Id., 111. In *Suarez I*, the documentary evidence submitted in opposition to a motion for summary judgment raised a genuine dispute concerning the employer's belief that an employee would inevitably amputate his fingers as a result of the employer's demands of the employee. Id. The Supreme Court remanded the case for trial, which resulted in a plaintiff's verdict. The matter was appealed again.

In *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 698 A.2d 838 (1997) (*Suarez II*), our Supreme Court described its earlier ruling as establishing an exception to the workers' compensation exclusivity provision if the employee can prove "either that the employer actually intended to injure the plaintiff (actual intent standard) or that the employer intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur (substantial certainty standard)."[3] Id., 257–58. The Supreme Court reiterated that "[s]ubstantial certainty centers on whether the employer *believed* the injury was substantially certain to follow the employer's acts or conduct . . . ." (Emphasis in original.) Id., 280–81.

---

[3] Here, the plaintiff relies on the substantial certainty standard, not the actual intent standard.

Since *Suarez*, the exception to exclusivity has been further elucidated. The substantial certainty test permits a plaintiff "to maintain a cause of action against an employer where the evidence is sufficient to support an inference that the employer deliberately instructed an employee to injure himself." (Internal quotation marks omitted.) *McCoy* v. *New Haven*, 92 Conn. App. 558, 563, 886 A.2d 489 (2005). "[T]he plaintiff must allege facts to establish either that the employer actually intended to injure the plaintiff (actual intent standard) or that the employer intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur (substantial certainty standard). Under either theory of employer liability, however, the characteristic element [of wilful misconduct] is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the resulting injury also must be intentional." (Internal quotation marks omitted.) *Morocco* v. *Rex Lumber Co.*, 72 Conn. App. 516, 523, 805 A.2d 168 (2002).

Although it is less demanding than the actual intent standard, the substantial certainty standard is, nonetheless, an intentional tort claim requiring an appropriate showing of intent to injure on the part of the defendant. *Suarez I*, supra, 229 Conn. 109–10. This court has stated: "It is important to note that the substantial certainty standard is a subset of the intentional tort exception. . . . Whereas the intentional tort test requires that both the act producing the injury and the specific injury to the employee must be intentional . . . the substantial certainty standard requires a showing that the act producing the injury was intentional or deliberate and the resulting injury, from the standpoint of the employer, was substantially certain to result from the employer's acts or conduct." (Citations omitted.) *Ramos* v. *Branford*, 63 Conn. App. 671, 679–80, 778 A.2d 972 (2001).

In sum, the substantial certainty standard requires that the plaintiff establish that the employer intentionally acted in such a way that the resulting injury to the employee was substantially certain to result from the employer's conduct. Id., 680; *Sullivan* v. *Lake Compounce Theme Park, Inc.*, 277 Conn. 113, 118, 889 A.2d 810 (2006). To satisfy the substantial certainty standard, a plaintiff must show more than "that [a] defendant exhibited a 'lackadaisical or even cavalier' attitude toward worker safety . . . ." *Stebbins* v. *Doncasters, Inc.*, 263 Conn. 231, 234, 819 A.2d 287 (2003). Rather, a plaintiff must demonstrate that his employer believed that its conduct was substantially certain to cause the employee harm. Id.

With the foregoing principles in mind, we now analyze the plaintiff's claim that the court improperly granted the defendant's motion for summary judgment. In opposition to the motion for summary judgment, the plaintiff claimed that the defendant violated twenty of its own safety regulations, in addition to many regulations of the Occupational Safety and Health Administration (OSHA).[4] Essentially, the plaintiff claimed that the

---

[4] In his complaint, the plaintiff alleged that the defendant intentionally created a dangerous condition in which his injuries were substantially certain to occur in that it:

"[a] failed to have the clamp start-button function only under constant positive pressure by the operator;

"[b] failed to install a light curtain across the face of the aforesaid leaf break machine;

"[c] failed to install a trip wire along the face of the machine;

"[d] failed to limit the operation of the machine to one employee;

"[e] failed to provide and require the use of hand tools to position sheet stock into the point of operation of the aforesaid leaf break machine;

"[f] failed to reduce the opening height of the clamp by pre-determining and pre-setting the height of the clamp opening of the bender prior to production;

"[g] failed to out source the operation even though the operation of bending and/or crimping sheets of plate steel is infrequently performed;

"[h] failed to install guards at all points of operation of the aforesaid leaf break machine to prevent employees from having any part of their body in the danger zones during the operating cycles of the aforesaid machine in violation of 29 C.F.R. 1910.212 (a) (3) (ii);

defendant failed to provide appropriate training to him in working with the metal bending machine and failed to take any safety precautions to prevent his injury. The plaintiff argued that the combined effect of the large number of safety violations and the lack of training created a situation that would allow a trier of fact to find that the defendant intentionally created a dangerous situation in which it had been substantially certain that his injury would occur. We disagree.

"A wrongful failure to act to prevent injury is not the equivalent of an intent to cause injury." *Melanson* v. *West Hartford*, supra, 61 Conn. App. 689 n.6. An employer's "intentional, wilful or reckless violation of safety standards established pursuant to federal and state laws" is not enough to extend the intentional tort exception for the exclusivity of the act. *Ramos* v. *Branford*, supra, 63 Conn. App. 678. As noted in *Mingachos* v. *CBS, Inc.*, supra, 196 Conn. 104, the act contains a provision that allows for more compensation if the

---

"[i] removed guards that were located at all points of operation of the aforesaid leaf break machine causing, or allowing and permitting, employees to have parts of their bodies in the danger zones during the operating cycles of the aforesaid machine in violation of 29 C.F.R. 1910.212 (a) (3) (ii);

"[j] refrained from training and instructing employees in safe methods of work before starting work on a mechanical power press in violation of 29 C.F.R. 1910.217 (f) (2) when they knew, or should have know[n], that such reasonable measures were available to make—and would make—the machine the plaintiff was working on considerably safer;

"[k] failed to provide the plaintiff with adequate warnings, instructions, safety precautions or other information concerning the use of the subject leaf break machine;

"[l] failed to provide adequate, permanent instruction labeling or permanent warning labels even though the [d]efendant was or should have been aware that the leaf break machine was substantially certain to cause the type of harm suffered by the plaintiff;

"[m] failed to provide the plaintiff with adequate warnings, instruction or safety precaution information even though it was foreseeable the plaintiff would not be aware of the danger in using the leaf break machine; and

"[n] failed to provide pressure sensitive mats for the front of the aforesaid machine which would prohibit operation of the machine while person(s) were standing thereon."

injury resulted from an OSHA violation, which demonstrates a clear understanding by the legislature that such injuries would be covered by the act. See General Statutes § 31-307.[5]

The plaintiff also provided expert testimony that his injuries were substantially certain to occur. The critical flaw in the plaintiff's argument, however, is that it ignores the requirement of a showing of the employer's *subjective* belief that the injury was substantially certain to occur. It is not the gravity of the employer's conduct that comes under scrutiny but, rather, the employer's subjective belief.[6] *Suarez II*, supra, 242 Conn. 279. Thus, an opinion by an expert that an injury was substantially certain to occur does not support the requirement that the *defendant* believed that its conduct was substantially certain to cause the employee harm. See *Stebbins* v. *Doncasters, Inc.*, supra, 263 Conn. 234.

---

[5] General Statutes § 31-307 (b) provides: "Notwithstanding the provisions of subsection (a) of this section, any employee who suffers any injury or illness caused by the employer's violation of any health or safety regulation adopted pursuant to chapter 571 or adopted by the federal Occupational Safety and Health Administration and listed in 29 CFR, Chapter XVII, after the violation has been cited in accordance with the provisions of section 31-375 or the provisions of the Occupational Safety and Health Act of 1970, 84 Stat. 1601 (1970), 29 USC 658 and not abated within the time fixed by the citation, provided the citation has not been set aside by appeal to the appropriate agency or court having jurisdiction, shall receive a weekly compensation equal to one hundred per cent of the employee's average weekly earnings at the time of the injury or illness."

[6] In his reply brief and at oral argument, the plaintiff referred to *Sorban* v. *Sterling Engineering Corp.*, 79 Conn. App. 444, 450, 830 A.2d 372, cert. denied, 266 Conn. 925, 835 A.2d 473 (2003), positing that the court should employ an objective standard in examining the substantial certainty test. To the extent that dicta in *Sorban* may be viewed as inconsistent with *Suarez*, "[w]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) *Mazzuca* v. *Sullivan*, 94 Conn. App. 97, 102, 891 A.2d 83, cert. denied, 278 Conn. 905, 896 A.2d 107 (2006).

Although the defendant admitted that, because the machine was capable of bending metal, it knew that it could probably harm a person, there is no evidence that the plaintiff was instructed to work with the machine turned on. Here, the evidence submitted indicates that the machine was turned off when the plaintiff inserted his hand into the machine and that the machine was turned on as a result of miscommunication with another employee. Because the plaintiff failed to demonstrate the existence of a genuine issue of material fact as to the defendant's intent to create a dangerous situation that it knew was substantially certain to injure him, the court properly rendered summary judgment in favor of the defendant.

The judgment is affirmed.

In this opinion ROGERS, J., concurred.

MCDONALD, J., dissenting. I respectfully disagree that the plaintiff Eduardo Martinez has not presented evidentiary facts or substantial evidence to defeat a motion for summary judgment.

In this case, the plaintiff submitted evidence that his injury was caused at the point of operation of a metal forming machine when its clamp severed his forearm. He was loading and positioning metal into the machine when a coworker, without verbal clearance from the plaintiff, put the machine into operation. The plaintiff's work assignment to assist in the loading and positioning of metal into the machine, which bent or formed metal under pressure, was improper. The operation of the machine required the plaintiff's coworker to have his back to the plaintiff while the plaintiff loaded and positioned metal at the machine's point of operation. At the time, the Occupational Safety and Health Administration (OSHA) found that the machine had no guards or sensing devices to prevent its operation while an

employee was loading and positioning metal into the point of operation.

The plaintiff also submitted a copy of the safety plan of the defendant employer, the Southington Metal Fabricating Company. That plan stated that its purpose was to avoid injury at the workplace. With reference to a forming machine, the plan specifically stated that the point of operation must be guarded where it can cause injury and that an interlocking device must be considered. A pressure sensing device, as required for point of operation devices, must protect the machine operator by interlocking into the control circuit to prevent or stop its slide motion if the operator's hand or other part of his body is within the sensing field of the device during the operation of the press slide. The plan also required guards to protect all areas of point of entry to the point of operation not protected by the pressure sensing device. The plan also required that all employees be given regular and continuing safety training. The plaintiff submitted evidence that neither he nor his coworker operating the machine had received any safety training.

In *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 111–12, 639 A.2d 507 (1994) (*Suarez I*), our Supreme Court held that a showing much like that made by the plaintiff here would allow a finder of fact to infer that the employer believed an injury was substantially certain to follow from his acts or conduct. The jury in *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 280, 698 A.2d 838 (1997) (*Suarez II*), did not draw such an inference but did find that the employer intended to injure the employee, albeit, our Supreme Court held, without sufficient evidence of specific intent to injure. Our Supreme Court remarked in *Suarez II* that the evidence presented might sustain a finding that the employer believed an injury was substantially certain

to occur where ill will or malevolence on the part of the employer was not required. Id., 279.

In this case, the plaintiff produced evidence of specific violations of the employer's own safety manual and OSHA requirements for safety devices within and outside the forming machine and evidence that the operators were not trained in the safe operation of the machine. The plaintiff also produced expert evidence that this conduct made the plaintiff's injury a predictable and substantially certain event.

As to the requirement that the defendant could be found to have believed to a substantial certainty that the conduct would result in employee injury, it must be considered that the employer adopted its own specific safety plan to avoid such an injury with a metal forming machine and then knowingly did not implement the plan in any way. The defendant's multiple failures to obey OSHA requirements, which it promised to abide by in the safety plan,[1] is further evidence of the knowing nature of the employer's conduct. When considered with the employer's knowledge of the danger inherent in the improper use of the metal forming machine, I believe that a trier of fact could find an intentional injury defined as one that the employer believed was substantially certain[2] to follow from the employer's acts or conduct. Although a failure to make the workplace safe may not itself render an employer's conduct intentional, when, as here, that fact is coupled with the employer's recognition in its safety plan that the forming machine must be made safe to avoid employee injury

[1] The plan states: "It is the intent of [the defendant] to comply with all laws concerning the operation of the business and the health and safety of our employees and the public."

[2] Our Supreme Court, in a per curiam opinion, adopted a trial court's decision that defined substantially certain as equivalent to inevitability. See *Stebbins* v. *Doncasters, Inc.*, 263 Conn. 231, 819 A.2d 287 (2003), *aff'g*, 47 Conn. Sup. 638, 820 A.2d 1137 (2002); see also *Sorban* v. *Sterling Engineering Corp.*, 79 Conn. App. 444, 451 n.3, 830 A.2d 372, cert. denied, 266 Conn. 925, 835 A.2d 473 (2003).

at the point of operation, the combination may render the conduct intentional.

I would conclude that the plaintiff's submissions raise an issue of material fact regarding the defendant's conduct toward the plaintiff and the defendant's knowledge that his injury was substantially certain to occur. See *Suarez I*, supra, 229 Conn. 111. "[W]hether the actor knows that the consequences of his or her conduct are certain or substantially certain to result from his or her act and still proceeds with the conduct, so that he or she should be treated by the law as though he or she in fact desired to produce the result, is a question of fact for the jury." Id.

Accordingly, I respectfully dissent.